SURE–SNAP CORP., The Estate of Alfred Shure and Elaine Shure, Plaintiffs,

v.

BRADFORD NATIONAL BANK, Defendant.

SURE–SNAP CORP., a New York corporation, The Estate of Alfred Shure, by and through its Personal Representative Elaine Shure and Elaine Shure, Individually, Plaintiffs,

v.

STATE STREET BANK AND TRUST COMPANY, Defendant.

Civ. A. Nos. 90–173, 90–144.

United States District Court, D. Vermont.

May 10, 1991.

David C. Pollack, Glenn Waldman, Stroock & Stroock & Lavan, Miami, Fla. and Richard H. Saudek, Cheney, Brock & Saudek, Montpelier, Vt., for plaintiffs.

Charles W. Throckmorton, Koyzak, Tropin & Throckmorton, Miami, Fla., for defendant Bradford Nat. Bank.

Daniel Lyne, Hanify & King, Boston, Mass. and Geoffrey W. Crawford, O'Neill & Crawford, Burlington, Vt., for defendant State Street Bank and Trust Co.

## OPINION AND ORDER

PARKER, District Judge.

Defendants in these companion cases each moved to dismiss plaintiffs' lender liability actions. The motions were consolidated, converted to motions for summary judgment, and heard by the Court on April 1, 1991. Both motions are hereby GRANTED.

## I. BACKGROUND

Plaintiffs (hereafter often denominated collectively as "Sure–Snap") are a reorganized Chapter 11 debtor, which formerly manufactured and distributed garment fasteners, the estate of the corporation's former president, Alfred Shure, and the current president, Elaine Shure. They brought suit in May 1989 in the Southern District of Florida[1] against defendant banks alleging predatory banking practices. The claims against both banks include

---

**1.** The action against State Street Bank and Trust Company was subsequently transferred to the District of Vermont; the action against Brad-ford National Bank was dismissed for lack of personal jurisdiction and reinitiated in this District in July 1990.

breach of a duty to deal in good faith, breach of fiduciary duty, and intentional infliction of emotional distress. The complaint against State Street Bank and Trust Company (hereafter "State Street") contains additional counts: interference with corporate governance, tortious interference with business relationship, and breach of contract. The two banks' motions to dismiss rely on a combination of estoppel and res judicata arguments premised on the assertion that plaintiffs' present claims are no longer viable, by virtue of their never having been raised during the earlier bankruptcy proceedings in Florida. For purposes of defendants' motions, all of plaintiffs' allegations are taken as true.

The complaints allege that the president of Bradford National Bank (hereafter "Bradford"), who had befriended the Shures when they purchased a house from the bank in Newbury, Vermont, arranged for the issuance of two Industrial Development Revenue Bonds (IDRB) by the Vermont Industrial Development Authority (VIDA) to finance the relocation of part of the Sure–Snap business to Vermont from Florida. In doing so, according to plaintiffs, the bank president was "[p]reying upon Al Shure's entrepreneurial instincts," and "position[ing] Bradford Bank later to gain and regain control over valuable Vermont real estate." State Street was invited to participate in the proposed loan, requiring "[a]s a condition for its participation ... that it become Sure–Snap's primary working capital lender."

Bradford then purchased one bond in the amount of $150,000; State Street purchased the other for $600,000. VIDA deposited the proceeds from the sale of the bonds in the Construction Fund held by Bradford, as trustee, to finance the Shures' construction project. On April 27, 1984, the Shures executed the IDRB documents for a construction loan in the amount of $750,000. The debt was secured by a mortgage on the plant and a security interest in the equipment. The corporation was pri-

mary obligor; the debt was also guaranteed by Al and Elaine Shure. The Shures subsequently built and equipped their industrial plant and warehouse in Bradford, Vermont.

State Street also agreed to provide Sure–Snap a $1 million working capital revolving line of credit. This agreement required the bank to use its "best efforts" to satisfy Sure–Snap's reasonable needs for capital. Under the loan agreement, Sure–Snap had to deposit every check it received in the course of business into a trust account at State Street. The bank further required monthly financial reports, conducted an audit every three months, and "frequently required Sure–Snap to seek State Street Bank's approval before making management decisions." Their relationship soured over time: Plaintiffs allege that State Street demanded immediate payment of the IDRB in June 1986 "without cause or prior notice" and reduced the line of credit, eventually by $50,000 per week, ultimately terminating it in March of 1987.

■ The corporation filed a voluntary petition for Chapter 11 bankruptcy protection on March 26, 1987, in the Southern District of Florida.[2] The petition was signed by Elaine Shure in her capacity as president of Sure–Snap. On December 17, 1987, Sure–Snap filed its Chapter 11 plan of reorganization together with the disclosure statement required by 11 U.S.C. § 1125, both signed by Elaine Shure. Neither the disclosure statement nor the plan of reorganization revealed the existence or provided for the retention of any claims against defendant banks. The disclosure statement initially contained the following sentence: "The line of credit lender to the company, the State Street Bank, refused to cooperate with the Debtor during this difficult time, thus forcing the Debtor to file a Chapter 11 Reorganization." In an amendment to the disclosure statement filed on February 3, 1988, that particular sentence was deleted. While there is some dispute

2. The Court takes judicial notice of the bankruptcy court proceedings under Fed.R.Evid. 201. See *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416 n. 3 (3d Cir.), *cert.*

*denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); 21 C. Wright & K. Graham, Federal Practice and Procedure § 5106 (Supp.1990).

over the reasons for the deletion, it is undisputed that, in its final form as submitted to other creditors and approved by the bankruptcy court as "containing adequate information" pursuant to § 1125(b) of the Bankruptcy Code, the disclosure statement did not even allude to any claims against defendants.

In April and May of 1988, plaintiffs Sure–Snap and Elaine Shure filed objections to State Street's and Bradford's proofs of claim regarding the two Vermont bonds, referring to an adversary proceeding filed by Elaine Shure in the bankruptcy court on April 21, 1988. The adversary complaint challenged the validity of the banks' liens, stating the debt was unenforceable because the State of Vermont had not obtained a license to lend money under the Vermont Licensed Lenders Act. The complaint raised no other issues. The bankruptcy court upheld the validity of the liens, and was affirmed by the U.S. District Court for the Southern District of Florida.

A hearing on the reorganization plan was held on June 16, 1988. On June 28, the bankruptcy court entered an order, over objections by both banks, confirming Sure–Snap's plan of reorganization, which provided, inter alia, for Sure–Snap to transfer the Vermont plant to Bradford as trustee in satisfaction of the claims of Bradford and State Street. *In re Sure–Snap Corporation, Debtor,* No. 87–00985–BKC–SMW (S.D.Fla.). The order made no mention of any defenses, counterclaims, or offsets to the claims of the banks, nor did it reserve to Sure–Snap any right subsequently to challenge the banks' claims.

After the confirmation hearing, Sure–Snap filed an amendment to its schedules[3] listing a claim of unknown value against both banks for breach of contract, tortious interference and fraud, based upon the loan transactions. The amendment is dated June 15, 1988, but was filed with the court after the hearing, although the precise date of filing is not clear from the record. On September 21, 1988, almost three months after confirmation of the plan, Sure–Snap moved to have the confirmation order amended to preserve the present causes of action. The bankruptcy court denied the motion. Sure–Snap then moved to reconsider the ruling; that motion too was denied.

## II. DISCUSSION

Defendants advance several related arguments for dismissal (or, as converted, for summary judgment) based on the preclusive effect of the completed bankruptcy proceedings. We conclude that plaintiffs' claims are barred by res judicata and award summary judgment on that basis.[4]

3. A debtor in bankruptcy must file a schedule of its assets and liabilities pursuant to 11 U.S.C. § 521(1). The form designated by Bankruptcy Rule 1007(b)(1) for this purpose, Official Form No. 6, includes Schedule B–2, which requires the debtor to disclose, inter alia, "[c]ontingent and unliquidated claims of every nature, including counterclaims of the debtor."

4. Accordingly, we are not required to reach defendants' other grounds for dismissal. Nevertheless, to place the res judicata doctrine in proper context, it is well briefly to address some of the alternative theories. Defendants give particular emphasis to the contention that Sure–Snap is equitably estopped from now bringing its lender liability claims by its failure to disclose those claims during the bankruptcy proceedings. See *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417–19 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). *Oneida* noted that under § 1125 of the Bankruptcy Code, "a debtor must disclose any litigation likely to arise in a non-bankruptcy contest. The result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions." *Id.* at 417 (citation omitted). "Even absent a specific mandate to file a counterclaim, complete disclosure is imperative to assist interested parties in making decisions relevant to the bankrupt estate." *Id.* at 419. See also *County Fuel Company, Inc. v. Equitable Bank Corp.,* 832 F.2d 290, 293 (4th Cir.1987) (breach of contract action precluded where debtor failed to assert counterclaim in opposition to creditor's proof of claim in bankruptcy court).

Res judicata protects the finality of judgments; equitable estoppel is concerned more with preventing a party from benefiting from a mid-course change of position where the opposing party relied on the earlier position. Estoppel thus requires proof of justifiable reliance; res judicata does not. The equitable estoppel theory is not ripe for adjudication at this stage of the proceedings as there are unresolved factual issues pertaining to the degree and reason-

■ "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The doctrine of res judicata, also called "claim preclusion," "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Id.* It is "a rule of fundamental repose important for both the litigants and for society." *In re Teltronics Services*, 762 F.2d 185, 190 (2d Cir.1985).

A judgment is "res judicata not only as to what was pleaded, but also as to what could have been pleaded. New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata." *Id.* at 193.

[W]hen a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352 [24 L.Ed. 195]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any

ground whatever, absent fraud or some other factor invalidating the judgment.

*Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). The elements of the doctrine have been summarized in this Circuit as follows: Res judicata "applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Teltronics Services*, 762 F.2d at 190; accord *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990).

There can be little question that the bankruptcy court's order confirming Sure–Snap's plan of reorganization satisfies the first three elements.[5] The bankruptcy court clearly had jurisdiction over both the plan of reorganization and the present lender liability claims; its order was a final judgment on the merits of the plan of reorganization, see *Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938); and the plaintiffs here include the very party which filed the petition in bankruptcy and submitted the plan of reorganization, as well as its privies. See *Justice Oaks*, 898 F.2d at 1550–51. At issue is the fourth element, that the earlier decision must involve the same cause of action.

---

ableness of the banks' reliance on Sure–Snap's nondisclosure.

Defendants also urge dismissal on the basis of *judicial* estoppel, again principally relying on the Third Circuit's decision in *Oneida*, 848 F.2d at 419. The doctrine of judicial estoppel is intended to protect the integrity of the courts by precluding a party from assuming a position in a legal proceeding inconsistent with one previously asserted. The doctrine is not well-established in the Second Circuit, however, see *United States v. Bedford Assocs.*, 713 F.2d 895, 904 (2d Cir.1983); *Vista Company v. Columbia Pictures Inds., Inc.*, 725 F.Supp. 1286, 1292 (S.D.N.Y.1989), and, in light of our disposition on other grounds, we decline to rule on its applicability in the present case.

State Street additionally contends that the present suit is precluded because Sure–Snap's claims were compulsory counterclaims in the bankruptcy proceedings. That is not so. As

stated in the Advisory Committee Note (1983) to Bankruptcy Rule 3007, objections to proofs of claim are "contested matters" governed by Rule 9014, which does not, in turn, incorporate the compulsory counterclaim rule.

Finally, State Street urges dismissal on the basis of collateral estoppel, waiver, laches, lack of standing (of Elaine Shure and the Estate), and, as to certain counts in the complaint, failure to state a claim under Florida state law. We do not address these theories.

5. Defendants assert as a bar to plaintiffs' claims both the bankruptcy court's order confirming Sure–Snap's plan of reorganization and the adversary judgment rendered by the bankruptcy court holding that the banks' security interests were valid and enforceable. Our decision is predicated on the preclusive effect of the former only.

The Second Circuit has explained that "the circumstance that several operative facts may be common to successive actions between the same parties" by itself is insufficient to qualify them as the same cause of action. *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983). The court must look to several factors. "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Id.* at 1260. In other decisions this Circuit has additionally inquired "whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action." *Herendeen v. Champion International Corp.*, 525 F.2d 130, 133 (2d Cir.1975); accord *Tucker v. Arthur Anderson & Co.*, 646 F.2d 721, 727 (2d Cir.1981).

Plaintiffs insist that the issues before the bankruptcy court involved different facts and different evidence from those involved in their present claims. They argue that the issues before the bankruptcy court were limited to the validity, enforceability and extent of the banks' secured loans to Sure–Snap, while the present lawsuit, conceding the banks' right to recover the debt, involves breaches of fiduciary duty and related tort claims, primarily predicated on facts that developed after the transactions originating the indebtedness, such as the deterioration in plaintiffs' relationship with State Street.

The bankruptcy proceedings, however, were not so narrow as Sure–Snap makes out. The "cause of action" in the bankruptcy court included Sure–Snap's petition for Chapter 11 protection from its creditors as well as the creditors' proofs of claim and any challenges thereto; in short, it comprised all matters pertaining to the debtor-creditor relationship that Sure–Snap or any creditors might have raised to advance their interests in the proceedings.

The factors listed in *United Technologies* for determining whether a prior judgment is the same cause of action for res judicata purposes are all present here. First, "the same transaction or connected series of transactions is at issue," namely, the dealings between Sure–Snap as borrower and the two banks as lenders. The series of transactions at issue in the bankruptcy proceedings included not only the negotiations and executions of the loan agreements and mortgages, but also the subsequent actions by State Street and Sure–Snap to implement the terms of their agreement, such as State Street's reduction of the line of credit and Sure–Snap's efforts to obtain extensions. All these transactions relate to the heart of the bankruptcy case: the debtor's attempt to restructure its relationships with its creditors.

Second, "the same evidence is needed to support both claims." Sure–Snap's "claim" in the bankruptcy proceedings was, in the first instance, that it was unable to pay its debts. The evidence to support that claim included the amounts due State Street and Bradford under the IDRB agreements and the amounts due State Street under the line of credit that State Street had reduced and ultimately terminated just prior to Sure–Snap's filing for bankruptcy protection—in short, evidence necessary to sustain plaintiffs' claims in the present lawsuit. Furthermore, had they known of the grounds for lender liability claims against the banks, the *unsecured* creditors would have supported *their* claims in the bankruptcy case with the same evidence, as they stood to benefit by a judgment against the secured banks. All the creditors, as noted above, were entitled to know of the potential lender liability claims. 11 U.S.C. § 1125(b) directs the debtor to file a disclosure statement containing "adequate information," a term defined in § 1125(a) to include information "that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." Adequate information would necessarily include prospective tort claims against the secured creditors for damages far in excess of the value of those

creditors' secured claims. Furthermore, 11 U.S.C. § 521(1) requires the debtor to file a schedule of its assets and liabilities, among which it must list, on the form designated by Bankruptcy Rule 1007(b)(1), any claims or counterclaims against its creditors.

Third, "the facts essential to the second [judgment] were present in the first." All the facts alleged in the complaints occurred and were known to plaintiffs prior to the bankruptcy filing. As plaintiffs allege, it was defendants' wrongful conduct that *drove* them into bankruptcy.

Finally, the additional factor listed in *Herendeen* and *Tucker* is also present: a judgment for plaintiffs in this Court would impair the rights of the banks established by the bankruptcy court's confirmation order, for it would nullify the benefits obtained by that order.

Sure–Snap petitioned the bankruptcy court to restructure its relationships with its creditors. It obtained the relief it requested. It now seeks to bring claims, related to the identical series of transactions but never disclosed or preserved in the bankruptcy proceedings, against its principal creditors that would entirely undo the work and judgment of the bankruptcy court. This it cannot be permitted to do. We conclude that the lender liability claims are part of the same cause of action before the bankruptcy court. Because they could and should have been litigated in that forum, res judicata bars their litigation now.

A number of recent decisions from other circuits involving similar facts arrive at the same result. In *Justice Oaks*, 898 F.2d at 1552, the Eleventh Circuit held that a creditor's claims of fraud against another creditor involved in prior bankruptcy proceedings were precluded because they could have been raised in its objections to the confirmation plan, and therefore subsequent litigation of the claims constituted "an impermissible collateral attack on the order confirming the plan." Similarly, the First Circuit in *In re Medomak Canning*, 922 F.2d 895, 901, 902–03 (1st Cir.1990), stating that a bankruptcy "trustee's court-approved settlement must have finality," held that res judicata bars junior lienors'

equitable subordination claims where they had failed to assert such claims, despite the opportunity to do so, prior to the court-approved settlement in which the trustee had compromised the estate's equitable subordination claims. In *Hendrick v. Avent*, 891 F.2d 583, 587 (5th Cir.), *cert. denied*, ⎯ U.S. ⎯, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990), a debtor's fraud and breach of fiduciary duty claims pertaining to a sale of the debtor's stock were held barred by the res judicata effect of a prior adversary judgment of the bankruptcy court approving the stock sale. The debtor's "later claims were inconsistent with the crux of the initial decision and he had the opportunity to effectively litigate his claim in the bankruptcy court.... The collateral attacks brought later are barred by res judicata." *Id.*

In a case strikingly similar in its facts to those before us, the Fifth Circuit held debtors' lender liability claims against creditors barred on res judicata grounds where (1) the debtors had obtained a confirmed Chapter 11 plan five years earlier without having disclosed the existence of the lender liability claims against the creditors, and (2) the creditors' claims against the debtors had been the subject of adversary proceedings in the earlier Chapter 11 bankruptcy case. *Matter of Howe*, 913 F.2d 1138, 1146–47 (5th Cir.1990). The subsequent action was held barred even though the reorganization plan "reserved [to the debtors] the right to prosecute 'any claims or causes of action' which existed in their favor and that were not previously litigated to a final judgment." *Id.* at 1141. The debtors' claims in *Howe* closely resemble those made here: the creditors "induced the Howes [the debtors] to incur substantial indebtedness without regard to their ability to repay the borrowed sum. The aim, according to the Howes, was to drive the Howes into financial ruin so that the defendants could obtain a certain tract of the Howes' land for commercial development." *Id.* They also alleged interference with the management of their farm, and claimed violations of fiduciary and contractual duties.

The *Howe* court, applying the "transactional test," concluded that the debtors' action was the same cause of action as the earlier proceeding as it was "based on the same nucleus of operative facts that informed their earlier bankruptcy proceedings." *Id.* at 1144–45. The court expressly rejected the debtors' argument that "their action does not meet the transactional test because '[t]he only right and duty resolved in the bankruptcy proceeding was the obligation of the Howes to make payments to the [creditors] pursuant to the obligations incurred by them; there was no consideration of an obligation from the [creditors] to the Howes.'" *Id.* at 1144. The court stated that the creditors and debtors

> were diametrically opposed from the inception of the reorganization proceedings, and the Howes had, and took full advantage of, the "right to be heard in the reorganization proceedings." The Howes instituted adversary proceedings against Premier in which they contested the validity of Premier's lien and charged that the loan was usurious. Every facet of Premier's loan was the subject of litigation and negotiation. Under the circumstances, the Howes not only had the opportunity to bring the present claims against Premier but the obligation to do so.

*Id.* at 1146–47 (quoting *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 871 (5th Cir.1984)) (footnotes omitted). See also *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 872 (5th Cir. 1984) (court's order confirming a trustee's sale of debtor's property barred debtor's later claim that the creditor engaged in fraudulent and extortionate activities leading to that sale).

For the foregoing reasons, summary judgment in favor of defendants is GRANTED.