*E. Transferee is entitled to judgment as a matter of law under Rule 56(c).*

As outlined above, Transferee produced sufficient evidence that there are no material facts in dispute as to any of the elements of its ordinary course of business defense under § 547(c)(2). Also, Plan Administrator has failed to proffer any evidence that demonstrates the existence of a factual dispute for trial. Therefore, even viewing the record in the light most favorable to Plan Administrator, Transferee is entitled to judgment as a matter of law under Rule 56(c).

**CONCLUSION**

Transferee established that the Alleged Transfer Payments were made in payment of a debt that Wall Street incurred in the ordinary course of business of both parties. Also, Transferee's undisputed evidence demonstrates that the Alleged Preference Payments were subjectively ordinary as between Transferee and Wall Street. Finally, Transferee has demonstrated that Wall Street remitted the Alleged Preference Payments to it according to ordinary business terms. Further, Plan Administrator has failed to produce any evidence that demonstrates the existence of any material fact in dispute for trial. Therefore, Transferee is entitled to judgment as a matter of law on its ordinary course of business defense under § 547(c)(2).

An Order consistent with this Memorandum Opinion will be entered this date.

**In re Hannah GOLDSTEIN, Debtor.**

**Hannah Goldstein, Plaintiff,**

v.

**Thomas M. Griffing, Defendant.**

**Bankruptcy No. 92–03178–PHX–RJH.**
**Adversary No. 02–01081.**

United States Bankruptcy Court,
D. Arizona.

July 23, 2003.

E.J. Peskind, Esq., Scottsdale, AZ, for Debtor.

Shelton L. Freeman, Esq., Deconcini, McDonald, Yetwin & Lacy PC, Phoenix, AZ, for Thomas Griffing.

## OPINION

RANDOLPH J. HAINES, Bankruptcy Judge.

The issue here is whether a former Chapter 11 debtor may assert, post-confirmation, an interest in property that was allegedly owned but never disclosed in the debtor's schedules or disclosure statement

nor addressed in the plan. Because the Court concludes that the plaintiff–debtor's claim is precluded by principles of *res judicata,* the defendant's motion for summary judgment is granted in part and the remaining non-bankruptcy issue is remanded to state court.

## FACTS

Plaintiff Hannah Goldstein claims that in 1989 defendant Carol Burns made an oral contract to convey to Goldstein a one-half interest in Burns' Paradise Valley residence, as consideration for Goldstein's services as Burns' caretaker due to Burns' deteriorated medical condition. Goldstein lived in Burns' residence rent-free from 1989 until July of 2001, when Burns' family moved her to an assisted living facility. Shortly thereafter, Burns' son changed the locks to prevent Goldstein from re-entering the Paradise Valley residence.

Goldstein filed her chapter 11 case in 1992, and confirmed her plan in 1998. Her interest in the Paradise Valley property was not scheduled as a real property interest, as a contract claim or in any fashion, and was not mentioned in the debtor's disclosure statement or plan. Moreover, Goldstein claimed a homestead exemption in her house in Scottsdale, even though she was then living in Burns' Paradise Valley home. Arizona law requires a debtor to reside in property claimed as a homestead.[1]

Goldstein sued Burns in state court in August of 2001, seeking a judicial declaration that Goldstein owned a one half interest in Burns' Paradise Valley residence. Burns answered and denied that Goldstein had any interest in her home. Burns died on March 7, 2002, and her will, which had been executed in Goldstein's presence in 1996, left nothing to Goldstein. Burns' Personal Representative, Thomas Griffing, was substituted as defendant in Goldstein's state court lawsuit, and he removed the action to the Bankruptcy Court.

Defendant Griffing has now moved for summary judgment, asserting that Goldstein's claims to the Paradise Valley home are barred by principles of res judicata, judicial estoppel and equitable estoppel. Goldstein responds that it would be inequitable to bar her claims, and that she did not list her interest in the home because her counsel at the time had advised that it was barred by the statute of frauds.

## ANALYSIS

### Res Judicata

■ Res judicata is not a single legal principle but rather a collection of related rules. Res judicata contains two separate and independent elements as defined by the Restatement (Second) of Judgments (hereafter the "Restatement"): 1) claim preclusion, which applies to matters never litigated (Restatement §§ 18–26), and 2) issue preclusion, which applied to matters actually litigated (Restatement §§ 27–29).[2] Because there has been no prior litigation over Goldstein's claims to the Paradise Valley property, claim preclusion is the relevant rule here.

■ Claim preclusion itself includes the separate principles of "merger," "bar," and "splitting." Merger prevents a plaintiff from asserting a new action on a "claim or any part thereof" when a "final personal judgment" had previously been rendered

---

1. Arizona Revised Statutes (hereinafter "A.R.S.") § 33–1101(A) permits an Arizona resident to claim as a homestead the "person's interest in real property in one compact body upon which exists a dwelling house in which the person resides."

2. *In re Assoc. Vintage Group, Inc.,* 283 B.R. 549, 555 (9th Cir. BAP 2002).

in plaintiff's favor on that claim. Restatement 18(1). Bar prevents a plaintiff from bringing another action on the same claim that the plaintiff had previously lost. Restatement § 19. Splitting is the rule that a claim may not be separated from the "series of connected transactions, out of which the action arose." Restatement § 24. There are a number of exceptions to the rule against splitting, but none is relevant here. See Restatement § 26.

■ To apply claim preclusion, one must first define what the claim is. The "claim" for these purposes is not the Bankruptcy Code's definition of creditors' claims[3] but rather the Restatement's definition.[4] According to the Restatement, a claim "consists of all rights to remedies that arise out of the same 'transaction,' determined 'pragmatically' based on the interrelation of the facts, whether they form a convenient trial unit, and whether treatment as a unit conforms to the parties' expectations...."[5]

The Ninth Circuit has adopted the principles of the Restatement in defining what constitutes the same "claims" for res judicata purposes:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts.[6]

These tests are merely reformulations of the Restatement definition of claims as "rights and remedies that arise out of the same transaction" and that "form a convenient trial unit."

■ This definition of "claim" thus hinges on what constitutes a "transaction." The Restatement states that while the definition of "transaction" is imprecise, it means "a natural grouping or common nucleus of operative facts."[7] One of the determinants of this natural grouping or common nucleus is whether the issues constitute a "convenient unit for trial purposes."[8] Although confirmation of a Chapter 11 plan often does not involve a trial, an expansion of this concept to encompass the entire bankruptcy case would not do violence to the intent of the Restatement.

■■ A chapter 11 case "comprise[s] all matters pertaining to the debtor-creditor relationship that [the debtor] or any creditors might ... raise[ ] to advance their interests in the proceeding."[9] Moreover, there is substantial case law defining the kinds of issues that are "related to" a bankruptcy case, because this concept is used in defining one aspect of bankruptcy jurisdiction in 28 U.S.C. § 1334(b). This is an appropriate concept to use for res judicata purposes, because it was intended to reference the kind of supplemental jurisdiction defined in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and more recently codified in 28 U.S.C. § 1367, both of which

---

**3.** 11 U.S.C. § 101(5).

**4.** *Assoc. Vintage Group*, 283 B.R. at 556.

**5.** *Id.*

**6.** *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980); *see also Assoc. Vintage Group*, 283 B.R. at 558.

**7.** Restatement § 24 cmt. b.

**8.** *Id.*

**9.** *Sure–Snap Corp. v. Bradford Nat'l Bank*, 128 B.R. 885, 890 (D.Vt.), *aff'd*, 948 F.2d 869 (2d Cir.1991); *see also In re Kelley*, 199 B.R. 698, 702 (9th Cir. BAP 1996).

define claims "that are so related ... that they form part of the same case or controversy under Article III of the United States Constitution." [10] Although such "related to" bankruptcy jurisdiction may be broader,[11] it is clear that it at least includes claims that "could conceivably have any effect on the estate being administered in bankruptcy." [12]

▮▮▮▮ Because the "transaction" is the entire chapter 11 case and claims so related to it that they may have an effect on the estate, the Restatement's "claim" in the bankruptcy context must include any cause of action relating to the case or the estate, which would include all of the debtor's executory contracts, property interests, contract rights and causes of action. Bankruptcy Code § 541(a)(1) defines the estate to include "all legal or equitable interests of the debtor in property." Certainly Goldstein's claimed interest in the Burns' home was property of her bankruptcy estate, and the assertion of such an interest would therefore have a direct effect upon her estate. Such a claim was therefore so closely related to her bankruptcy case that it was part of the "natural grouping or common nucleus of operative facts," and therefore was part of the same "transaction" as her bankruptcy case and plan confirmation, for purposes of the Restatement's definition of "claim." In particular, the value of that interest would have to be included in the calculation of whether the Goldstein plan provided creditors at least as much as they would have received in a chapter 7 liquidation, for purposes of confirmation requirement 11 U.S.C. § 1129(a)(7)(A)(ii). And creditors would want to know what property Goldstein was retaining under the plan, because unless they were paid in full their acceptance of the plan was necessary for her to retain any nonexempt property by virtue of the absolute priority rule of § 1129(b)(2)(B)(ii).

The final stage of the analysis is to apply the elements of claim preclusion to the facts. The Ninth Circuit Bankruptcy Appellate Panel has created a three step test for applying res judicata to the bankruptcy context: 1) identify who the defendants and plaintiffs are for purposes of the Restatement's merger and bar provisions, 2) ascertain whether the second action would be splitting a claim that should have been asserted previously, and 3) determine if one of the exceptions of Restatement § 26 applies.[13]

The rules of merger and bar are more easily applied to adversary proceedings than to the administrative bankruptcy case. For example, the Restatement refers to a "judgment rendered in favor of the plaintiff," but it is difficult to deter-

---

**10.** 28 U.S.C. § 1367(a); *see e.g., Lang v. Lang (In re Lang),* 293 B.R. 501, 517 n. 19 (10th Cir. BAP 2003); Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory,* 41 Wm. & Mary L.Rev. 743, 939 (2000).

**11.** For example, it includes jurisdiction to enter a money judgment on a debt determined by the bankruptcy court to be nondischargeable, even though such judgment and its collection have no effect on the bankruptcy estate. *Cowen v. Kennedy (In re Kennedy),* 108 F.3d 1015, 1017–18 (9th Cir.1997); *Lang, supra,* at 516–17.

**12.** *Fietz v. Great W. Sav. (In re Fietz),* 852 F.2d 455, 457 (9th Cir.1988), quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984).

**13.** *In re Assoc. Vintage Group,* 283 B.R. 549, 558 (9th Cir. BAP 2002). Because of the special nature of a chapter 11 case, res judicata analysis is applied in a more thorough manner. But the Ninth Circuit res judicata law is merely being tailored to the particular context of a chapter 11 case, not being modified in its substance.

mine in whose "favor" was the conclusion of a bankruptcy case, or even confirmation of a plan. Indeed, plans are supposed to be in the best interests of all parties in interest rather than in "favor" of the debtor or the creditors. But this distinction does not make a difference in result, only a difference in terminology as to whether merger or bar applies. If confirmation of a plan is regarded as a judgment in "favor" of the debtor (or plan proponent), then an interest in property, contract claim or other cause of action that should have been asserted by the debtor as part of the plan would be barred by merger, because the debtor already had judgment in her favor. But if the plan is regarded as being in favor of the creditors, then the debtor's action would be precluded by the doctrine of bar, because the debtor already lost that claim.

Plaintiff's new claim is effectually a split off of the claims and interests that should have been raised in Goldstein's bankruptcy case and plan. It was required to be identified in the debtor's schedules and disclosure statement. Because the plan was effectively a judgment in the debtor's "favor," claims that should have been part of that judgment are now barred by the doctrine of merger. Such a claim may not be split off from the claims dealt with by the prior judgment unless Restatement § 26 provides an exception. But none of the § 26 exceptions applies: (a) the parties have not agreed the claim can be split, (b) the court has not reserved the plaintiff's right to the second action, (c) subject matter jurisdiction has not been implicated, (d) the plan confirmed was not contrary to the Bankruptcy Code, (e) there is no recurring harm to plaintiff, and (f) there are no extraordinary circumstances regarding plaintiff's personal liberty.

Plaintiff's claim is therefore precluded by the doctrine of merger and the rule on splitting because this is a new claim that was not brought during the original chapter 11 case, but was part of that same transaction, the same natural grouping or common nucleus of facts, the bankruptcy estate. On facts such as these, the Ninth Circuit and other circuits have frequently held that claims newly asserted post-confirmation are barred by principles of res judicata, collateral estoppel and/or judicial estoppel.[14]

### Advice of counsel defense

 Goldstein argues it would be inequitable to bar her claim because she relied on advice of counsel in not listing the claim or her property interest in Burns' home in her bankruptcy case. She claims her bankruptcy counsel (not present counsel) concluded that any such claim would be barred by the statute of frauds, which requires real property conveyances to be in writing.[15] She implies that her

**14.** *E.g., Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir.2002); *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 783 (9th Cir.2001)("In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."); *Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557 (9th Cir.1992); *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Southmark Props. v. Charles House Corp.,* 742 F.2d 862 (5th Cir.1984); *Stein v. United Artists Corp.,* 691 F.2d 885 (9th Cir.1982); *Heritage Hotel Ltd. P'ship I v. Valley Bank of Nev. (In re Heritage Hotel P'ship I),* 160 B.R. 374, 378 (9th Cir. BAP 1993) (the "plan of reorganization is a final order which is res judicata and bars the subsequent assertion by the [debtor/plaintiff] of lender liability claims which arose under prepetition acts").

**15.** A.R.S. § 44–101 provides in pertinent part: "No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought,

present counsel has concluded that prior counsel was mistaken in so advising her, that she had no fraudulent intent in not listing her claimed interest in the Burns' home, and that she should not lose this valuable property solely because her attorney was mistaken or negligent. Goldstein provides no case law that has ever recognized an advice of counsel exception to res judicata but insists that the Bankruptcy Court's "common sense" should prove dispositive on the matter.

Goldstein's novel defense falls outside the scope of advice of counsel defenses that have been judicially recognized. The defense is primarily used to negate a charge of fraud or bad faith. "[T]he defense of a debtor's reliance on advice of counsel may excuse or explain acts which otherwise bear indicia of fraud, assuming that all relevant information is in fact provided the attorney." [16] But no charge of fraud or bad faith has been made by defendants, nor would such a charge be necessary to the res judicata defense they have asserted. None of the elements of res judicata hinges on the party's intent or state of mind.

Even if plaintiff could show that an advice of counsel defense is available, she would presumably also have to show that her reliance on such advice was reasonable. Mrs. Goldstein could not have reasonably believed that a one-half interest in the Paradise Valley property did not need to be listed in the bankruptcy schedules or disclosure statement. She did list eight properties in her schedules, each with varying interests. Included was the Scottsdale residence where Goldstein held an actual 50% interest, and in which she claimed her homestead exemption. Goldstein could not have reasonably believed that the Paradise Valley home did not also need to be listed on the schedules like her Scottsdale home. Courts have denied an advice of counsel defense on facts such as these.[17]

It is possible that Goldstein believed that she did not have an enforceable and existing real property interest but merely a contract claim. And yet there was similarly no listing of any interest in the Paradise Valley property as an equitable or future interest or as a contingent and unliquidated claim. Even "attorney error does not absolve a debtor who signs the petition and schedules under penalty of perjury, from the duty to ensure the information is accurate and complete to the best of his knowledge." [18]

Goldstein's advice of counsel defense must be rejected because: 1) fraud is not essential to application of res judicata, 2) Goldstein could not have reasonably relied on counsel's advice, and 3) Goldstein could

---

or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized: ... 6. Upon an agreement for leasing for a longer period than one year, or for the sale of real property or an interest therein."

16. *Palmer v. Downey (In re Downey)*, 242 B.R. 5, 15 (Bankr.D.Idaho.1999). *See Kaler v. McLaren (In re McLaren)*, 236 B.R. 882, 897 (Bankr.D.N.D.1999); *Butler v. Ingle (In re Ingle)*, 70 B.R. 979, 984 (Bankr.E.D.N.C.1987); *InterFirst Bank Greenville, N.A. v. Morris (In re Morris)*, 58 B.R. 422, (Bankr.N.D.Tex. 1986); *Comprehensive Accounting Corp. v.*

*Morgan (In re Cycle Accounting Servs.)*, 43 B.R. 264, 269 n. 7 (Bankr.E.D.Tenn.1984).

17. *Stephens v. Stinson*, 292 F.2d 838 (9th Cir.1961)(unreasonable to rely on attorney's advice not to list fifteen thousand dollars in bankruptcy schedules and to keep the money under the mattress); *In re Bateman*, 646 F.2d 1220, 1224 (8th Cir.1981)(debtor could not reasonably believe it appropriate to exclude from bankruptcy schedules a gift of a one-half interest in a grocery store and income from that grocery store).

18. *Downey*, 242 B.R. at 15.

not have signed the schedules to the best of her knowledge without including the claim against the Paradise Valley property.

### Clean hands doctrine

■■■■ Even if there were some equitable exception to application of res judicata, Goldstein would have to demonstrate her clean hands in order to avail herself of it. The Bankruptcy Court's equitable powers are "available only to those debtors and creditors with 'clean hands.' "[19] Furthermore, "[a] court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest. It may in the public interest, even withhold relief altogether...."[20]

■■■ Goldstein claimed her homestead exemption on her Scottsdale home. The debtor must "reside" in a home for it to qualify for the homestead exemption,[21] and yet she now admits that she was residing in Burns' Paradise Valley residence at all relevant times. While she might have believed that she could not claim a homestead in the Paradise Valley residence because she had no interest in it of public record, she could not reasonably have believed that she was residing in the Scottsdale residence. Goldstein's argument thus not only hinges on her admission of an improper homestead exemption for her Scottsdale home, but would also effectively award her with an impermissible second homestead exemption for her claimed interest in the Paradise Valley residence, because her nondisclosure of it kept it

from creditors just as much as a proper homestead claim.

Goldstein cannot assert her advice of counsel defense without revealing her own unclean hands, and for this additional reason the Court rejects her novel equitable defense.

### CONCLUSION

The Court grants Defendant's motion for summary judgment as to counts 1 and 2 of Plaintiff's complaint. The remaining count 3 conversion claim will be remanded to state court because it is not sufficiently related to Goldstein's bankruptcy case and its disposition does not appear to hinge on any aspects of bankruptcy law.

---

**19.** *In re Little Creek Dev. Co.,* 779 F.2d 1068, 1072 (5th Cir.1986).

**20.** *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

**21.** A.R.S. § 33–1101(A).