In re HERITAGE HOTEL PART-
NERSHIP I, a limited part-
nership Debtor.

HERITAGE HOTEL LIMITED PART-
NERSHIP I, a Nevada limited partner-
ship; National Heritage Industries, Inc.,
a Nevada Corporation; and Daniel Keis-
erman, Appellants,

v.

VALLEY BANK OF NEVADA, a Nevada
corporation; and Key Bank, a foreign
corporation, Appellees.

BAP No. NV–93–1254–RMeAd.
Bankruptcy No. BK–S–91–24449–RCJ.
Adv. No. 92–2239.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on Sept. 24, 1993.

Decided Nov. 2, 1993.

William L. McGimsey, Las Vegas, NV, for appellants.

Janet L. Chubb, Reno, NV, for appellees.

Before: RUSSELL, MEYERS and ADLER[1], Bankruptcy Judges.

*OPINION*

RUSSELL, Bankruptcy Judge:

After the confirmation of the debtor's Chapter 11[2] plan, the debtor brought a complaint asserting various lender liability causes of action which arose out of a prepetition lending arrangement. Neither the plan nor the disclosure statement mention these causes of action. The bankruptcy court dismissed the complaint as barred by the doctrines of *res judicata* and equitable estoppel. We AFFIRM.

## I. FACTS

The Debtor/Appellant Heritage Hotel Limited Partnership I, ("Heritage"), received a construction loan from Valley Bank of Nevada, ("Valley"), now known as Bank of America of Nevada, in the face amount of $10,200,-000, for the construction of a hotel and casino. Valley is a secured creditor holding a deed of trust securing certain real property of Heritage.

Heritage was unable to complete the construction of the hotel. Valley commenced foreclosure proceedings which were stayed by the filing of Heritage's voluntary Chapter 11 petition on November 13, 1991. Heritage did not include any claims or causes of action against Valley in its bankruptcy schedules.

On February 4, 1992, Valley moved for relief from the automatic stay in order to proceed with foreclosure proceedings. The bankruptcy court ordered Heritage to file a plan and disclosure statement on or before April 6, 1992 and to promptly prosecute the plan to confirmation. The court deferred ruling on Valley's motion for relief from the stay.

On April 6, 1992, Heritage proposed a plan of reorganization. The plan stated that Heritage's principal reorganization objectives were to sell, refinance or lease the hotel property in that order. An amended disclosure statement was filed June 22, 1992.

On July 6, 1992, the Heritage plan was confirmed, and the order of confirmation was entered on September 11, 1992. Neither the plan, nor the disclosure statement mentioned any claims or lawsuits by Heritage against Valley. Rather, the plan indicated that it was Heritage's intention to pay Valley's claim in full.

Class 3 of Heritage's plan provides:

This Class consists of secured creditors. The secured creditors are Valley Bank with a principal obligation of approximately $9,600,000.00 and an unsecured obligation of approximately $870,000.00 as of the date of the Plan. The other secured creditor is LoanPartners Capital with an outstanding balance of approximately $1,500,000.00. *It is the intention of the*

---

1. The Honorable Louise DeCarl Adler, Bankruptcy Judge from the Southern District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

*Debtor to have cured any defaults on these notes within six (6) months of confirmation of the Plan and thereafter make the payments due to such creditors in accordance with the terms of the obligation to said creditors.* If the Debtor can sell the property for sufficient cash or refinance the property for sufficient cash, then said creditors will be paid in full. If the property is ultimately leased, then these notes will be cured and the obligations assumed. (emphasis added).

The confirmation order included a provision that entitled Valley to foreclose on or after September 9, 1992 if it were not paid in full or a satisfactory escrow had not been opened. Subsequent to the confirmation hearing, Valley granted Heritage an extension of the foreclosure sale date to September 21, 1992.

On September 17, 1992, Heritage, its general partner, National Heritage Industries, Inc., and its loan guarantor, Daniel Keiserman, (collectively "the Heritage plaintiffs") filed a complaint in state court, Clark County, Nevada, against Valley alleging various lender liability causes of action[3] arising out of the prepetition lending relationship with Valley. At the same time, the Heritage plaintiffs moved for a temporary restraining order and preliminary injunction to prevent Valley's foreclosure sale. The action was removed to the bankruptcy court.

The bankruptcy court denied the Heritage plaintiffs' motion for a preliminary injunction on the ground that Heritage was bound by the confirmation order and that their claims were precluded by the doctrine of *res judica-*

ta. The Panel denied a motion for stay pending appeal of the bankruptcy court's order denying the preliminary injunction.

The bankruptcy court subsequently granted a motion by Valley to dismiss the Heritage plaintiffs' complaint on the grounds of *res judicata* and equitable estoppel. The Heritage plaintiffs appeal.

## II. ISSUE

Whether the confirmation of a Chapter 11 plan of reorganization precludes the subsequent assertion of a lender liability action when the basis for such action arose from prepetition acts fully known by the debtor.

## III. STANDARD OF REVIEW

■ Findings of fact are reviewed under the clearly erroneous standard, while conclusions of law are reviewed *de novo*. *In re Holm*, 931 F.2d 620, 622 (9th Cir.1991); *In re Deer Park*, 136 B.R. 815, 817 (9th Cir. BAP 1992). Fed.R.Bankr.P. 8013.

## IV. DISCUSSION

### A. *Res Judicata*

■ Valley argues that the doctrine of *res judicata* applies to a validly entered Chapter 11 confirmation order and operates to preclude the assertion of actions which arose out of the prepetition relationship of the parties, the facts of which were fully known by the debtor. We agree.

■ Generally, four elements must be present in order to establish the defense of *res judicata*: (1) the parties were identical[4]

---

**3.** The complaint alleges, *inter alia*, fraud, breach of written and oral loan agreements, breach of the duty of good faith and fair dealing, interference with prospective economic advantage and the failure to disclose certain information.

**4.** The issue of whether *res judicata* also applies to the other Heritage plaintiffs (National Heritage and Daniel Keiserman), was not raised in the Heritage plaintiffs' opening brief. Valley's brief did address the issue. Since the "identical parties" requirement was not raised by the appellant, this Panel may treat it as waived.

In any event, it is clear from decisions addressing the issue that *res judicata* does apply to bar non-debtor plaintiffs. Parties also subject to the *res judicata* effect of a Chapter 11 plan include

creditors, equity holders, principals of the debtor and parties in privity or successors in interest. *See Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir.1992) (Debtor's wife); *Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 877 (2nd Cir.1991) (president and CEO); *Sanders Confectionery Products Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480–81 (6th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993) (parent company, parent company president, lender and successors in interest). As one court stated:

To release creditors and equity security holders from the bonds of *res judicata* would allow them to launch collateral attacks on confirmed plans, undermining the necessary ability of bankruptcy courts to settle all of the claims

in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and, (4) the same cause of action was involved in both cases. *Eubanks v. F.D.I.C.*, 977 F.2d 166, 169 (5th Cir.1992).

The Heritage plaintiffs argue that the bankruptcy court erred by finding the third element satisfied, stating that an order confirming a plan of reorganization is not a final judgment. We disagree.

Section 1141(a) provides that all parties to a confirmed plan are bound by its terms:

> (a) ... the provisions of a confirmed plan bind the debtor ... and any creditor, ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan.

11 U.S.C. § 1141(a).

Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings. *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Sanders Confectionery Products Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). As one commentator noted:

> Subject to compliance with the requirements of due process under the Fifth Amendment, a confirmed plan of reorganization is binding upon every entity that holds a claim or interest even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan, or is not entitled to retain an interest under such plan.

5 *Collier on Bankruptcy*, ¶ 1141.01[1], at 1141–6 (15th ed. 1993). "Like final judgments, confirmed plans of reorganization are binding on all parties, and issues that could have been raised pertaining to such plans are barred by *res judicata*." J.S. Gilbert, *Substantive Consolidation in Bankruptcy: A Primer*, 43 Vand.L.Rev. 207, 239 (1990).

■ It is now well-settled that a bankruptcy court's confirmation order is a binding, final order, accorded full *res judicata* effect and precludes the raising of issues which could or should have been raised during the pendency of the case, such as typical lender liability causes of action. *Eubanks*, 977 F.2d at 171 ("There is little doubt that the bankruptcy court's confirmation order is binding and final, and we accord it the weight of a final judgment for *res judicata* purposes."); *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir.1991) ("Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and *res judicata* principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings."); *Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 877 (2nd Cir.1991) ("[W]e rule today, that in the context of lender liability claims that could have been brought before a final plan for reorganization was confirmed, but weren't, the prior bankruptcy order was *res judicata* to the later action."); *Sanders Confectionery Products Inc.*, 973 F.2d at 485 ("[T]hese claims ... should have been brought during the bankruptcy proceeding, and *res judicata* prevents them from being raised now."); *Matter of Howe*, 913 F.2d 1138, 1147 (5th Cir.1990) ("[W]hen a confirmed plan discloses and specifically treats the creditor's claim, and the debtor has had a full opportunity to contest the creditor's claim in an adversary proceeding that is, in effect, settled in the plan, the debtor cannot collaterally attack the bankruptcy court's decision five years later in an action based on the same transaction.").

All of the acts complained of occurred before the filing of Heritage's petition. Clearly, the lender liability claims asserted by the

---

against the debtor. To interpret the term "party" narrowly would also run counter to the provisions of the Code which outline the effect of plans and offer methods for challenging the bankruptcy orders.
*Sanders Confectionery*, 973 F.2d at 481.

Here, National Heritage as a general partner of Heritage must bring any action because Heritage cannot sue in its own name. National Heritage's claims against Valley are derivative of Heritage's claims. The claims of Keiserman, as guarantor, also arise out of the lending relationship and are also derivative of Heritage's claims. Clearly, the confirmed plan is *res judicata* as to these plaintiffs as well.

Heritage plaintiffs arose out of the prepetition lending relationship and derive from the same nucleus of operative fact. All of the Heritage plaintiffs' counts of lender liability revolve around the same facts which would determine the treatment of the obligation to Valley.

■ We hold that the order confirming the Heritage plan of reorganization is a final order which is *res judicata* and bars the subsequent assertion by the Heritage plaintiffs of lender liability claims which arose under prepetition acts.[5]

### B. *Equitable Estoppel*

■ In addition to *res judicata*, the doctrine of equitable estoppel also operates to bar the lender liability action against Valley. Generally, four elements must be present in order to establish the defense of equitable estoppel: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the conduct to his injury. *United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir.1978) *cert. denied* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *United States v. Georgia–Pacific Co.*, 421 F.2d 92, 96 (9th Cir.1970). The Ninth Circuit has ruled that a party is equitably estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statement. *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir.1992). *Accord Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir. 1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).

The Ninth Circuit, in *Hay*, affirmed the district court's grant of summary judgment against the debtor corporation, effectively

barring its cause of action against the lender for prepetition acts. In *Hay*, the debtor corporation did not schedule any cause of action against the creditor in its petition, in its plan of reorganization, in its disclosure statement, nor in any subsequent amendments thereto. The court was convinced that the debtor had known of the existence of the facts surrounding its claim prior to plan confirmation, but failed to give notice of such claims. The Ninth Circuit reasoned that this lack of notice alone justified the grant of summary judgment against the debtor:

> The record establishes that plaintiff ... learned of the facts that led to the discovery of [the debtor's] claims sometime during the month preceding the month in which the [debtor's] reorganization plan was confirmed.
>
> .    .    .    .    .
>
> We recognize that *all* facts were not known to [the debtor] at that time, but enough was known to require notification of the existence of the asset to the bankruptcy court....
>
> .    .    .    .    .
>
> Failure to give the required notice estops [the debtor] and justifies the grant of summary judgment to the defendant.

*Hay*, 978 F.2d at 557 (citations omitted) (emphasis in original). The Ninth Circuit in *Hay*, therefore, reaches the same conclusion based on the lack of disclosure and equitable estoppel, rather than on § 1141(a) and *res judicata*.

The Third Circuit has also held that the failure to disclose a lender liability cause of action in the debtor's schedules or during the pendency of the Chapter 11 case equitably estops the debtor from raising the action at a later date. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir.1988), *cert. denied*, 488 U.S. 967, 109

---

**5.** Heritage in its brief argues that it should not be precluded from raising its lender liability claims because it is not mandatory that these claims be raised as a counterclaim in the context of automatic stay litigation. We agree with the proposition that the limited nature of stay litigation does not require that all potential counterclaims a party may have be raised at that time. *See D–1*

*Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36, 38–39 (5th Cir.1989). This argument, however, does not address what is really at issue in this case. It is the confirmation order that has *res judicata* effect barring the lender liability claims, not an order on a motion for relief from the automatic stay.

S.Ct. 495, 102 L.Ed.2d 532 (1988) ("[F]ailure to mention this potential claim either within the confines of its disclosure statement or at any stage of the bankruptcy court's resolution precludes this later independent action.")

The facts of this case closely resemble those of *Hay* and *Oneida* and warrant the same result as under the *res judicata* rationale. As stated before, all of the acts complained of occurred before the filing of Heritage's petition. All the material facts were known to Heritage at the time of the filing of the plan and disclosure statements. The Heritage plaintiffs do not dispute this. Heritage could and should have identified any such lender liability claims and raised them during the pendency of the bankruptcy case, before confirmation of the plan.

As noted before, neither the confirmed plan, nor the amended disclosure statement make any mention of potential claims against Valley. On the contrary, the plan and disclosure statement on their face would reasonably lead an independent reader to believe that Heritage's intention was to pay Valley's claim in full. The language of the plan itself contains Heritage's stated intentions:[6]

> It is the intention of the Debtor to have cured any defaults on these notes within six (6) months of confirmation of the Plan and thereafter make the payments due to such creditors in accordance with the terms of the obligation to said creditors. If the Debtor can sell the property for sufficient cash or refinance the property for sufficient cash, then said creditors will be paid in full.

Further, the disclosure statement acknowledged Heritage's obligation to Valley without reference to the lender liability claims or its dispute:

> In order to construct the hotel, the Debtor had received a construction loan in the original face amount of $10,200,000.00 from Valley Bank. At the present time, it is the Debtor's position that Valley Bank has advanced approximately $9,600,000.00 and

has accrued interest of approximately $870,000.00. Because of the Debtor's inability to complete the hotel, Valley Bank commenced foreclosure and these Chapter 11 proceedings ensued.

Moreover, Heritage's stated reorganization objectives were to sell, refinance, or lease the hotel property.

As the bankruptcy court noted, the confirmed plan was the product of settlement agreements between the parties in which both sides knew the facts which could have given rise to a lender liability claim and both sides gave something up in exchange for the approval of the plan. Valley compromised its position and reasonably relied on representations made by Heritage.

Heritage argues that no determination of actual prejudice to Valley was made by the bankruptcy court. The obvious prejudice is in Valley's reliance on statements in the plan which would lead Valley to reasonably believe that Heritage would pay its claim, not sue them for lender liability.

We hold that the failure to disclose any potential lender liability claims against Valley during the pendency of the bankruptcy case equitably estops the Heritage plaintiffs from subsequently asserting such claims.

## V. CONCLUSION

The bankruptcy court did not err in dismissing the Heritage plaintiffs' lender liability causes of action, all of which arose out of the prepetition relationship of the parties, and the facts of which were fully known by the debtor, as precluded under the doctrines of *res judicata* and equitable estoppel. Accordingly, we AFFIRM.

---

6. This case is distinguished from one in which a plan is confirmed before the debtor has an adequate opportunity to complete its work on "avoidance actions" and clearly states that it will be filing such actions once it completes the review process, but that at the time of confirmation it has not identified the potential defendants.