### In re ASSOCIATED VINTAGE GROUP, INC., Debtor.

**The Alary Corporation, Appellant,**

v.

**Charles E. Sims, disbursing agent for the estate of Associated Vintage Group, Inc., Appellee.**

**BAP No. NC–01–1418–KRyB.**
**Bankruptcy No. 99–13853–AJ–11.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted: March 20, 2002.

Filed: Sept. 13, 2002.

---

**13.** 206 B.R. 826 (Bankr.E.D.Va.1996).

**14.** *Id.* at 831.

Douglas B. Provencher, Provencher & Flatt LLP, Santa Rosa, CA, for The Alary Corporation.

Steven M. Olsen, Geary, Shea, O'Donnell & Grattan, Santa Rosa, CA, for Charles Sims, Disbursing Agent for the Estate of Associated Vintage Group, Inc.

Before KLEIN, RYAN and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The question is whether confirmation of a chapter 11 liquidating plan terminated the ability to recover an avoidable preference from a creditor. The analysis implicates principles of res judicata and of equitable or judicial estoppel. The answer depends on the terms of the plan and the dynamics of the process of confirming it.

Appellant argued that the doctrine of claim preclusion based on the confirmation of the debtor's liquidating plan prevented the plan's disbursing agent from objecting

to the secured status of appellant's claim as having been based on a preference. The bankruptcy court reclassified the claim as unsecured, reasoning that neither claim preclusion nor estoppel doctrines precluded the challenge since the confirmed plan reserved all claim objections and avoiding actions, did not definitely determine that appellant's claim was secured, and was not confirmed in circumstances in which a creditor was induced to accept the plan on the implied representation that the preference would not be attacked post-confirmation. We AFFIRM.

## FACTS

Debtor, Associated Vintage Group, Inc. ("AVG") filed its chapter 11 case on December 27, 1999.

Appellant, The Alary Corporation, dba Westec Tank Company ("Alary"), filed a proof of claim for $408,794.67, asserting secured status based on a security interest that had been granted within ninety days of bankruptcy on account of an existing debt.

AVG's chapter 11 plan called for an orderly liquidation by a disbursing agent who would have all powers of a chapter 11 trustee to pursue all rights extant as of confirmation that would yield a recovery or benefit for the estate and to "investigate, examine and *dispute, by objection* or other legal process, *any claim* or assessment against the AVG estate or its property." AVG Plan ("Plan"), art. V–C–2–a & b (emphasis supplied).

The plan called for the disbursing agent to pay only claims that meet the Bankruptcy Code definition of "Allowed Claim" and defined "Allowed Claim" to exclude claims

"subject to disallowance pursuant to § 502(d) of the Code." Plan, art. I.

The plan also reserved, for the benefit of persons entitled to distributions under the plan, all "claims, defenses, powers and interests" of the debtor "for the purposes of objecting to the allowance of claims" and "avoiding transfers of property or interests in property." Plan, art. VII.

To the extent Alary was secured, it was in Class 2–B: "any and all Allowed Claims secured by valid and unavoidable security interests in, and valid and unavoidable liens upon, specific property of AVG and not otherwise classified in Class 2–A and is not impaired." Plan, art. II–B–2.

Finally, the plan named Alary as an entity that could be pursued by the disbursing agent. Plan, art. VIII.

The order confirming the plan, among other things, appointed appellee Charles Sims as disbursing agent.[1]

Sims objected to Alary's claim of secured status as based on an avoidable preference and asked it be deemed unsecured.

Alary conceded that it received an avoidable preference, but argued that Sims' objection should be overruled because the plan: (1) did not sufficiently reserve a right to institute an avoiding action against Alary; (2) did not explicitly transfer avoiding rights to the disbursing agent; and (3) did not say that Sims' power to object to claims encompassed objections based on avoiding powers.

The court sustained Sims' objection, ruling that the plan preserved both the avoiding and claim objection powers and that Alary was not lured into accepting the plan

---

**1.** Although the separate document requirement of Federal Rule of Bankruptcy Procedure 9021 was not satisfied because the order

confirming the plan contained findings, it is final for claim preclusion purposes even though it might not otherwise be final.

on an implication there would be no objection to its claim and then sandbagged.

This timely appeal followed.

## JURISDICTION

Subject matter jurisdiction was founded on 28 U.S.C. § 1334. We have jurisdiction per 28 U.S.C. § 158(c).

## ISSUES

1. Whether the terms of the chapter 11 plan preserved the claim objection from claim preclusion.

2. Whether doctrines of judicial estoppel or equitable estoppel bar the disbursing agent from objecting to the claim.

## STANDARD OF REVIEW

■■■ The preclusive effect of a plan confirmation on claim objections is reviewed de novo as a mixed question of law and fact in which the legal questions predominate. *See Knupfer v. Wolfberg (In re Wolfberg)*, 255 B.R. 879, 881 (9th Cir. BAP 2000) (*"Wolfberg"*); *accord, First Nat'l Bank v. Russell (In re Russell)*, 76 F.3d 242, 244 (9th Cir.1996). We review application of the doctrines of judicial estoppel and equitable estoppel for abuse of discretion. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 780 (9th Cir.2001).

## DISCUSSION

This appeal presents another piece of the puzzle encountered when it is argued that the confirmation of a chapter 11 plan precludes, by way of principles of res judicata or equitable doctrines, subsequent objections to claims or avoiding actions.

In the past, we have blocked post-confirmation litigation on theories of claim preclusion and of estoppel. *Wolfberg*, 255 B.R. at 883–84; *Kelley v. S. Bay Bank (In re Kelley)*, 199 B.R. 698, 701–04 (9th Cir. BAP 1996) (*"Kelley"*); *Heritage Hotel*

*Ltd. P'ship I v. Valley Bank (In re Heritage Hotel Ltd. P'Ship I)*, 160 B.R. 374, 377 (9th Cir. BAP 1993), *aff'd mem.*, 59 F.3d 175 (9th Cir.1995) (*"Heritage Hotel"*).

The appellant's arguments in this appeal signal that we need to be more precise about our analysis of when and why plan confirmation renders particular disputes incontestable. In doing so, we will explain how our decisions in *Wolfberg, Kelley,* and *Heritage Hotel* square with the principles of res judicata stated in the *Restatement (Second) of Judgments (*"Restatement (Second)"*). Then we turn our attention to theories of judicial estoppel and equitable estoppel.

## I

Our decisions in *Wolfberg, Kelley,* and *Heritage Hotel* are best understood through the matrix of analysis provided by *Restatement (Second)*. This is fundamentally a common law subject as to which federal courts have embraced the *Restatement (Second)* and its official comments as authoritative. *See, e.g., Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1150 (9th Cir.1996) (*Restatement (Second)* § 18 cmt. g); *Hiser v. Franklin*, 94 F.3d 1287, 1290 (9th Cir.1996).

## A

The first thing we must do in explaining *Wolfberg, Kelley,* and *Heritage Hotel* is conform our nomenclature to catch up with the terminology used in the *Restatement (Second)* and in recent Supreme Court and Ninth Circuit decisions.

By the term "rules or principles of res judicata," we generically refer to the concepts addressed in the *Restatement (Sec-*

*ond)* regarding preclusive effects of former litigation. The terms "res judicata" and "collateral estoppel" have been replaced by an updated vocabulary in the interest of precision. RESTATEMENT (SECOND) OF JUDGMENTS, Introduction (1981); *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. 892; *Hiser,* 94 F.3d at 1290; *Paine v. Griffin (In re Paine),* 283 B.R. 33 (9th Cir. BAP 2002)(*"Paine"*); 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4402 ("The Terminology of Res Judicata") ("WRIGHT & MILLER").[2]

■ The genre of res judicata principles subsumes two basic categories. First, "claim preclusion" includes doctrines of "merger" and "bar" that foreclose litigation of matters that have never been litigated. "Claim preclusion" has supplanted the term "res judicata" that was traditionally used in a now-obsolete, non-generic sense (as used in *Wolfberg, Kelley,* and *Heritage Hotel*). Second, "issue preclusion," although often inaccurately called "collateral estoppel," actually includes doctrines of direct estoppel and of collateral estoppel, both of which foreclose relitigation of matters that have been actually litigated. *See Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. 892; *Hiser,* 94 F.3d at 1290; *In re Duncan,* 713 F.2d 538, 541 (9th Cir. 1983); RESTATEMENT (SECOND) OF JUDGMENTS §§ 18–26 (claim preclusion) & 27–29 (issue preclusion); 18 WRIGHT & MILLER § 4402.

■ The key distinction under the new scheme for describing the effect of judgments is that matters that never have been litigated may be barred by "claim preclusion," while matters that have been actually litigated may be barred by "issue preclusion."

Nevertheless, the concepts of "issue" and "claim" overlap in a manner that makes distinctions "often one of degree and emphasis in applying a deeper principle that an original misadventure cannot be retrieved for a second chance." 18 WRIGHT & MILLER § 4402. Thus, references to "preclusion" encompass both concepts and correspond with "res judicata" in the generic sense. *Paine,* 283 B.R. at 39.

Although we used the term "res judicata" in *Wolfberg, Kelley,* and *Heritage Hotel,* we were actually applying "claim preclusion" because each case barred litigation of matters that had not been actually litigated in the plan confirmation.

Likewise, in this appeal, we deal with "claim preclusion" because the question is whether the confirmation of the debtor's chapter 11 plan terminated the disbursing agent's ability to assert a preference theory that had never been litigated.

### B

"Claim preclusion" subdivides into doctrines of "merger," "bar," and the General Rule Concerning "Splitting," together with the Exceptions to the General Rule Concerning "Splitting." RESTATEMENT (SECOND) OF JUDGMENTS § 24.

---

**2.** The current state of the trend toward more precise terms has been summarized as follows:

> Although the time has not yet come when courts can be forced into a single vocabulary, substantial progress has been made toward a convention that the broad "res judicata" phrase refers to the distinctive effect of a judgment separately characterized as "claim preclusion" and "issue preclusion." The evolutionary progress toward these terms is described below. Subsequent discussion of specific rules, however, will also employ the still common terms of merger, bar, cause of action, collateral estoppel, and direct estoppel in deference to ingrained professional habits.
>
> 18 WRIGHT & MILLER § 4402.

**1**

■ The General Rule of Merger at *Restatement (Second)* § 18 precludes a plaintiff from maintaining an action on the original claim after a final judgment and, correlatively, precludes a defendant in an action on the judgment from raising defenses that were, or could have been, raised in the first action. RESTATEMENT (SECOND) OF JUDGMENTS § 18;[3] *see In re Del Mission Ltd.*, 98 F.3d at 1150 (*Restatement (Second)* § 18 cmt. g).

■ The General Rule of Bar at *Restatement (Second)* § 19 precludes a plaintiff who has lost once from suing again on the same claim. RESTATEMENT (SECOND) OF JUDGMENTS § 19;[4] *see Gilbert v. Ben–Asher*, 900 F.2d 1407, 1410–11 (9th Cir.1990) (*Restatement (Second)* § 19 cmt. b); *Harkins Amusement Enter., Inc. v. Harry Nace Co.*, 890 F.2d 181, 182 (9th Cir.1989).

■ These merger and bar rules are reinforced by the General Rule Concerning "Splitting" in *Restatement (Second)* § 24, which is a facet of the question of what constitutes a "claim" for purposes of merger and bar. A litigant is not permitted to "split" a "claim." A "claim" for these purposes arises out of the same "transactions" or "series of connected transactions." RESTATEMENT (SECOND) OF JUDGMENTS § 24.

The term "claim" as used in "claim preclusion" analysis differs from the bankruptcy meaning of "claim," which is a statutorily defined term meaning a present or future right to payment on a legal or equitable theory. 11 U.S.C. § 101(5).

The concept of "transaction" is central to the meaning of "claim" for purposes of these "claim preclusion" rules of merger and bar. The "claim" consists of all rights to remedies that arise out of the same "transaction," determined "pragmatically" based on the interrelation of the facts, whether they form a convenient trial unit, and whether treatment as a unit conforms to the parties' expectations or business understandings or usages. RESTATEMENT (SECOND) OF JUDGMENTS § 24;[5] *see United*

3. The provision is:
> § 18. JUDGMENT FOR PLAINTIFF–THE GENERAL RULE OF MERGER
> When a valid and final personal judgment is rendered in favor of the plaintiff: (1) the plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and (2) in an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.
> This rule is subject to the exception stated in § 26.
> RESTATEMENT (SECOND) OF JUDGMENTS § 18.

4. The provision is:
> § 19. JUDGMENT FOR DEFENDANT–THE GENERAL RULE OF BAR
> A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.
> This general rule is subject to the exceptions stated in §§ 20 and 26.

RESTATEMENT (SECOND) OF JUDGMENTS § 19.

5. The provision is:
> § 24. DIMENSIONS OF "CLAIM" FOR PURPOSES OF MERGER AND BAR–GENERAL RULE CONCERNING "SPLITTING"
> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
> (2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understandings or usage.

States ex rel. Barajas v. Northrop Corp., 147 F.3d 905, 910–11 (9th Cir.1998) (*Restatement (Second)* § 24 cmt. c).

The comments to *Restatement (Second)* § 24 explain that "transaction" is not susceptible of mathematically precise definition and that the pragmatic standard requires attention to the facts of the particular case in which the goal is to "strike a delicate balance between, on the one hand, the interests of the defendant," together with the interests of courts in closing litigation, and, on the other hand, "the interest of the plaintiff in the vindication of a just claim." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b; *see Abramson v. Univ. of Hawaii*, 594 F.2d 202, 206 (9th Cir.1979).

An important factor in the "transactional" analysis of whether "facts are so woven together as to constitute a single claim" is whether, "taken together, they form a convenient unit for trial purposes." *Id.* (emphasis supplied).

■ The Exceptions to the General Rule Concerning Splitting stated at *Restatement (Second)* § 26 include, as relevant here, agreement of the parties to splitting, reservation by the first court of the right to maintain a second action, and a statutory scheme contemplating splitting. RESTATEMENT (SECOND) OF JUDGMENTS § 26(1);[6] *see Sidney v. Zah*, 718 F.2d 1453, 1459 (9th Cir.1983).

2

Our claim preclusion decisions are consistent with the basic approach of the *Restatement (Second)*. We, of course, apply Ninth Circuit precedent, which comports with the *Restatement (Second)*.

■ The Ninth Circuit test to determine a "claim" for purposes of the merger

---

The general rule of this Section is exemplified in § 25, and is subject to the exceptions stated in § 26.

RESTATEMENT (SECOND) OF JUDGMENTS § 24.

6. The provision is:

§ 26 EXCEPTIONS TO THE GENERAL RULE CONCERNING SPLITTING

(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

(a) The *parties have agreed* in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or

(b) The *court in the first action has expressly reserved the plaintiff's right to maintain the second action;* or

(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or

(d) The judgment in the first action was plainly inconsistent with the *fair and equitable implementation of a statutory or constitutional scheme,* or it is the sense of the scheme that the plaintiff should be permitted to split his claim; or

(e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course; or

(f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

(2) In any case described in (f) of Subsection (1), the plaintiff is required to follow the procedure set forth in §§ 78–82.

RESTATEMENT (SECOND) OF JUDGMENTS § 26 (emphasis supplied).

and bar doctrines and rule concerning splitting is:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980); *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982); *Robertson v. Isomedix, Inc. (In re Int'l Nutronics)*, 28 F.3d 965, 969 (9th Cir.1994).

 Although the test cannot be applied mechanically and no one criterion is dispositive, the "most important" criterion is the "transactional nucleus of facts." *Costantini*, 681 F.2d at 1201–02; *Harris*, 621 F.2d at 343. This requires the pragmatic case-by-case analysis that is central to *Restatement (Second)* § 24.

Moreover, the second and third factors relating to the overlap of evidence and whether the same rights are infringed equate with the "convenient trial unit" of *Restatement (Second)* § 24(2). As the comments explain, "the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b. Likewise, in applying the test, the Ninth Circuit relies on comments to the *Restatement (Second)*. *Barajas*, 147 F.3d at 910–11 (*Restatement (Second)* § 24 cmt. c).

Thus, the *Restatement (Second)*'s "transactional" analysis comports with our decisions that apply the Ninth Circuit test.

## C

There are two alternative approaches to applying these claim preclusion principles to confirmed chapter 11 plans.

The complete approach is to plod through the following analysis of the chapter 11 plan: identify the parties that are "plaintiffs" and "defendants" for purposes of *Restatement (Second)* §§ 18–19 merger and bar; ascertain whether the second action would constitute "splitting" the "claim," based on the *Restatement (Second)* § 24 "transactional" analysis of the scope of the "claim;" and consider whether any "splitting" constitutes an authorized exception under *Restatement (Second)* § 26.

The short-cut that will suffice in many instances is to do what the bankruptcy judge did in this instance: work backwards from the exceptions while assuming that all other requirements for claim preclusion are satisfied. If the terms of the chapter 11 plan authorize the second action, then the "agreement to splitting" exception of *Restatement (Second)* § 26(a)(1) applies, and there is little point in wasting time on a more complete analysis of the elements of claim preclusion.[7]

 Regardless of whether one starts with the elements of claim preclusion or with the authorized exceptions in applying the analysis, we agree with the Third Circuit that "[c]laim preclusion doctrine must be properly tailored to the unique circumstances that arise when the previous litiga-

---

7. For this reason, one must be cautious about inferring a court's ruling regarding the scope of a *Restatement (Second)* § 24 "claim" when the court focused on *Restatement (Second)* § 26 exceptions. It may have assumed, without deciding, that a matter was within the scope of the *Restatement (Second)* § 24 claim.

tion took place in the context of the bankruptcy case." *E. Minerals & Chem. Co. v. Mahan,* 225 F.3d 330, 337 (3d Cir.2000).

### 1

The first tailoring alteration is to reiterate the caveat that the "claim" in "claim preclusion" must be distinguished from a § 101(5) Bankruptcy Code "claim."

The claim preclusion "claim" is determined under the *Restatement (Second)* § 24 transactional analysis and not the Bankruptcy Code's definition of "claim" as a statutorily defined term focused upon a present or future right to payment on a legal or equitable theory. 11 U.S.C. § 101(5).

There seems to be no way to avoid the ambiguous overlap of terms. Thus, one must be careful to bear in mind that, when applying claim preclusion, the Bankruptcy Code's definition of "claim" is not controlling.

### 2

Identifying the parties may also necessitate tailoring because the nature of chapter 11 as a collective proceeding involving the debtor and the universe of creditors and holders of interests (in which any party can propose a plan) can cloud the role of the players as plaintiff or defendant for purposes of *Restatement (Second)* §§ 18–19.

Some relationships among players are readily characterized as one thinks about a plan in terms of litigation of disputes; others are not. There are two-party issues, and there are multiparty issues complicated by swirling cross-currents as creditors compete with each other.

One should be mindful of who is competing with whom as one thinks about the key question of the scope of the "claim."

A comparison of our decisions in *Wolfberg, Kelley,* and *Heritage Hotel* with the instant appeal illustrates the point. In all three instances, the proponent of the chapter 11 plan was unambiguously a party to the dispute with a stake in the result.

*Kelley* and *Heritage Hotel* are easily understood as fundamentally two-party disputes over substantive questions of state law (enforceability of a guaranty and lender liability) between individual debtors, who also were the proponents of the confirmed chapter 11 plans, and a single creditor. *Kelley,* 199 B.R. at 700–01; *Heritage Hotel,* 160 B.R. at 375–76. There is no problem identifying the parties in either case, and other creditors did not have a significant stake in the outcomes.

*Wolfberg* was a dispute between a chapter 11 trustee appointed post-confirmation under a default clause in a confirmed plan and the individual debtors who were the plan proponents over whether the debtors had, in the plan, given up their right to exempt certain property from the bankruptcy estate. The post-confirmation chapter 11 trustee was held to be a party to the plan confirmation as representative of creditors who were parties to the plan confirmation proceedings. *Wolfberg,* 255 B.R. at 882.

Here, the plan proponent is not a party to the dispute and has no stake in the outcome. Structurally, the dispute is the eternal bankruptcy struggle between a secured creditor who would be paid in full and unsecured creditors who have an incentive to defeat Alary's $408,794.67 security interest so as to increase the fund from which unsecured creditors are paid pro rata. The fact that it is the disbursing agent, rather than an unsecured creditor,[8]

---

8. Unsecured creditors have standing to object to claims where a successful objection would increase the fund available for unsecured creditors.

against Alary, in its capacity as a secured creditor, is a distinction without a difference. *Wolfberg* settles the disbursing agent's status as party to the plan confirmation. The fiduciary obligation of the disbursing agent to maximize the estate flows to the unsecured creditors, who are the marginal payees under this plan; he represents their interests.

If the plan proponent were analogized to the plaintiff for purposes of merger and bar, then this would be a dispute between defendants in which the plaintiff has no interest in the outcome. Thus, the justification for applying merger and bar is thinner in this instance than in *Wolfberg, Kelley,* and *Heritage Hotel,* where in each instance the "plaintiff" plan proponent had a stake in the outcome.

### 3

Divining the scope of the "claim" for purposes of merger, bar, and splitting under the *Restatement (Second)* § 24 transactional analysis necessarily turns on the terms, the context, and the timing of the particular chapter 11 plan.

The case-by-case analysis is particularly important because the hallmark of chapter 11 is a flexibility in which the content of plans is primarily up to the genius of the drafter.

The essential elements of a chapter 11 plan are few. There must be classification, specification of the treatment of impaired classes with a presumption in favor of equality of treatment within each class, adequate means for the plan's implementation, and, for corporations, certain features regarding voting securities and control. 11 U.S.C. § 1123(a). Most other provisions are optional. 11 U.S.C. § 1123(b). The outer boundary is that provisions must be "appropriate" and "not inconsis-

tent with the applicable provisions" of the Bankruptcy Code. 11 U.S.C. § 1123(b)(6).

Some plan provisions are unquestionably definitive regarding particular disputes in a manner consistent with a "transaction." A plan can, for example, provide for satisfaction or modification of a lien, cancellation of an indenture, or curing or waiving a default. 11 U.S.C. §§ 1123(a)(5)(E)-(G). Likewise, it can provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate. 11 U.S.C. § 1123(b).

Other plan provisions leave matters to another day. As in this appeal, a plan may provide for the retention and enforcement, by a trustee or specially-appointed representative, of a claim belonging to the estate. 11 U.S.C. § 1123(b)(3)(B).

Context matters. Chapter 11 is essentially a structured negotiation conducted under rules prescribed by the Bankruptcy Code. Those negotiations take a variety of forms. Some chapter 11 plans need only resolve a few discrete disputes. Others must deal with a plethora of problems. The proposing of a plan and subsequent modifications may be part of the negotiation.

Timing also plays an important role. A plan may be proposed and confirmed relatively early in the case before much of the necessary bankruptcy business is accomplished, or it may be proposed near the end of the case after all possible disputes are resolved. A plan confirmed early in the process necessarily must leave more to future resolution than a plan confirmed after most disputes have been resolved.

A plan confirmed early in the case does not ordinarily definitively resolve claims.[9]

---

**9.** As we explained in *Heritage Hotel:*

This case is distinguished from one in which a plan is confirmed before the debtor

*See Heritage Hotel,* 160 B.R. at 379 n. 6. A chapter 11 plan can even be confirmed before the deadline to file proofs of claim. The rules of procedure provide that the holder of a claim that is the subject of a pending objection is not entitled to "accept or reject" (i.e. vote) unless the court temporarily allows the claim for a sum fixed by the court for the purpose of voting. Fed. R. Bankr.P. 3018.

In short, these considerations complicate the pragmatic case-by-case analysis of the chapter 11 plan to identify the *Restatement (Second)* § 24 "claim."

Our decisions in *Wolfberg, Kelley,* and *Heritage Hotel* are consistent with this transactional analysis. In each, there is a logical nexus between the subject of the second action and what was resolved in the plan so that they fit within the same "transactional nucleus of facts." *See Costantini,* 681 F.2d at 1201–02; *Harris,* 621 F.2d at 343.

In *Wolfberg,* the debtors represented in their disclosure statement and plan that their residence was not exempt and would be sold to fund the plan; the second action that was held to be precluded was the debtors' attempt to claim the residence as exempt. The facts plainly overlapped and formed one transaction for claim preclusion purposes. *Wolfberg,* 255 B.R. at 881.

In *Kelley,* the debtors negotiated the resolution of a creditor's objection to plan confirmation by agreeing to a particular interest rate in the plan, in exchange for which the creditor would relinquish other security. Throughout the confirmation process, the debtors treated the creditor's claim as valid. After confirmation, and after the creditor relinquished other security, the debtors *objected* to the creditor's claim on state law grounds. The debtors' objection was sufficiently related to the transaction that was resolved by settlement of the creditor's objection to plan confirmation that it "should have been raised" at that time. *Kelley,* 199 B.R. at 703. The fact that the objection was based on the transactional nucleus on which the creditor's claim was founded and that the evidence would overlap warrants the conclusion that they formed a single "claim" for claim preclusion purposes. *Id.* at 702.

In *Heritage Hotel,* the debtor obtained confirmation of a chapter 11 plan that provided for either full payment of a partially secured creditor owed more than $10 million or cure of all defaults in the obligation within six months, and that authorized the creditor to foreclose on a date certain if it had not been paid in full. The second action that was barred by claim preclusion was the debtor's undisclosed lender liability action that it filed four days before the plan's foreclosure deadline (as extended once by agreement). *Heritage Hotel,* 160 B.R. at 375–76. The lender liability action arose out of the same transaction that gave rise to the creditor's debt and would be determined on overlapping evidence. The amount of the debt was so great (86 percent of total secured debt) that it was not plausible that a debtor would obtain plan confirmation without mentioning the lender liability theory. This was the same transaction for claim preclusion purposes. *Id.* at 377–78.

■ In this appeal, the objection to Alary's claim has little to do with the plan confirmation proceedings, for the plan merely adopts the bankruptcy liquidation scheme and does not purport to settle

---

has an adequate opportunity to complete its work on "avoidance actions" and clearly states that it will be filing such actions once it completes the review process, but that at the time of confirmation it has not identified the potential defendants.

*Heritage Hotel,* 160 B.R. at 379 n. 6.

anything with creditors. There was no specially-negotiated treatment of Alary, nor of any creditor junior to Alary. The plan only permitted Alary to be paid if it had an "Allowed Claim," and the disbursing agent was authorized to object to claims if he questioned their allowability. There is no common transactional nucleus. Unlike *Kelley* and *Heritage Hotel,* the objection to the claim is the well-understood bankruptcy law theory of avoidable preference that does not arise out of the transaction that gave rise to the debt.

Moreover, a convenient trial unit is absent. Plan confirmation proceedings that are collective in nature are not ordinarily a convenient or efficient method for litigating a two-party avoidable preference matter.

It follows, and we hold, that there is not the "natural grouping or common nucleus of operative facts" and "convenient unit for trial" between confirmation of this particular plan and the objectionable preferential transfer of a security interest to Alary to warrant a conclusion that it was part of the same "transaction" for purposes of claim preclusion. RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b.

Accordingly, the disbursing agent's objection to Alary's claim on a theory of avoidable preference was not part of the transactional nucleus of the plan confirmation proceedings and, hence, was not part of the same "claim" for claim preclusion purposes under *Restatement (Second)* § 24.

### 4

■ In the alternative, if we were incorrect in our conclusion about the scope of the "claim" for claim preclusion purposes, we would nevertheless be required to affirm the order sustaining the objection to claim as it is one of the *Restatement (Second)* § 26 exceptions to the General Rule Against "Splitting."

In other words, assuming that the objection to Alary's claim is part of the same "claim" for preclusion purposes that was the subject of chapter 11 plan confirmation so that the *Restatement (Second)* § 24 merger and bar and the General Rule Concerning "Splitting" apply, the objection is nevertheless authorized.

In construing the *Restatement (Second)* § 26 exceptions, we need to be precise about our rule of construction. Since they are exceptions, it is tempting but fallacious to construe them narrowly.

■ The fallacy in narrowly construing *Restatement (Second)* § 26 exceptions is that claim preclusion is an affirmative defense. *See* Fed.R.Civ.P. 8(c). The party seeking to establish preclusion has the burden of proof of all elements, including that no exception applies. *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 407–08 (9th Cir.1985); 18 WRIGHT & MILLER § 4405. Doubts are resolved against preclusion. *Harris,* 621 F.2d at 343; 18 WRIGHT & MILLER § 4405.

■ Leaving the burden on the proponent of claim preclusion is appropriate because claim preclusion represents a delicate—and always uneasy—balance between the interests of finality and repose, on the one hand, and of permitting parties to litigate meritorious claims.[10] Unlike issue preclusion, where parties are being told not to litigate the same issue a

---

**10.** As observed in the *Restatement (Second):*

And underlying the [pragmatic transaction] standard is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim.

RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b.

second time, claim preclusion entails barring a party from litigating an issue that has never been determined. This is why claim preclusion is an affirmative defense that may be deemed waived if not advanced.

Nothing in *Restatement (Second)* § 26 suggests that the opponent of claim preclusion would have the burden to prove an exception to the General Rule Concerning "Splitting."

Two exceptions to the General Rule Concerning "Splitting" are peculiarly applicable to analysis of chapter 11 plans: an agreement; and a court order authorizing splitting.

a

First, a "claim" is not extinguished as a result of merger and bar if the parties "have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a).

A confirmed chapter 11 plan is an "agreement" for purposes of claim preclusion analysis. *Wolfberg,* 255 B.R. at 883 n. 5. It is prepared through a process of negotiation, regardless of whether it is ultimately confirmed over an objection. If the plan preserves causes of action against parties otherwise provided for in the plan, then any arguable splitting entailed in that preservation is permitted as an agreement.

This agreement to permit splitting can be an "agreement in effect" or may be by acquiescence. The requisite acquiescence may be merely by failing to object: "failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim." RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. a; *cf.* Fed.R.Civ.P. 8(c), *incorporated by* Fed. R. Bankr.P. 7008.

It follows that the affirmative defense of claim preclusion is waived if not timely raised, which is another way of saying that the defendant has acquiesced. *See Kern Oil & Refining Co. v. Tenneco Oil Co.,* 840 F.2d 730, 735 (9th Cir.1988). Likewise, the proponent of the defense has the burden of proof.

The agreement embodied in AVG's confirmed plan permitted payment to secured creditors only on "Allowed Claims secured by valid and unavoidable security interests." The plan defined "Allowed Claim" to exclude claims "subject to disallowance pursuant to § 502(d) of the Code." Moreover, it authorized the disbursing agent to "investigate, examine and dispute, by objection or other legal process, any claim or assessment against the AVG estate or its property." Plan, arts. I, II & V.

We specifically reject Alary's argument that AVG's chapter 11 plan was not sufficiently specific in its reservation of rights to object to claims and prosecute avoiding actions. A plan, as here, may provide that particular causes of action, or categories of causes of action, are preserved and not affected by confirmation and may, likewise, prescribe terms for conducting post-confirmation litigation over specific matters or categories of matters. *See Kelley,* 199 B.R. at 703–04; *In re County of Orange,* 219 B.R. 543, 564 (Bankr.C.D.Cal.1997).

Alary contends that the reservation in AVG's plan was insufficiently specific under *Kelley* because the plan did not say that the disbursing agent could bring a *preference* action. This misconstrues *Kelley.* While we did find the purported reservation in the *Kelley* plan to be insufficiently vague in the context of all the facts of that case, and observed that another court had once found a general reservation to rights to be insufficient, our comment was pure dictum made in the course of the case-by-case *Restatement (Second)* § 24 transactional analysis of the claim, and

cannot be construed as a general statement of law. *Kelley*, 199 B.R. at 704.

*Kelley* must be construed as consistent with our decision in *Heritage Hotel*, in which we pointed out that it is entirely possible that a general reservation of rights might be sufficient in another case. *Heritage Hotel*, 160 B.R. at 379 n. 6.

Moreover, the argument in this appeal illustrates the danger of engrafting an unduly burdensome specificity requirement onto the § 1123(b)(3) authorization for the retention and enforcement of claims belonging to the estate. 11 U.S.C. § 1123(b)(3)(B). The statute does not require it. As Alary's appeal demonstrates, no defendant will ever concede a reservation is specific enough.

 We agree with the other courts that regard it as impractical and unnecessary to expect that a disclosure statement and plan must list each and every possible defendant and each and every possible theory. *In re Ampace Corp.*, 279 B.R. 145, 158–59 (Bankr.D.Del.2002); *In re Weidel*, 208 B.R. 848, 852–53 (Bankr.M.D.N.C. 1997); *Amarex, Inc. v. Marathon Oil Co. (In re Amarex, Inc.)*, 74 B.R. 378, 380–81 (Bankr.W.D.Okla.1987). We decline to eviscerate the flexibility of chapter 11 liquidating plans merely to incorporate the statutory rules for collecting and liquidating estates, or to open some wonderful opportunities for collusion.[11]

As we shall see, the response to the concern that general reservations invite sharp practices that lure creditors into a sense of complacency when they otherwise would have contested plan confirmation is that such "sandbagging" is better addressed by doctrines of equitable and judicial estoppel.

Alary's agreement in the plan that the disbursing agent only pay "allowed claims" that are not disallowed under § 502(d) is dispositive. That section automatically disallows the claim of an entity that has received a preference and leaves the creditor with the choice of surrendering the preference or taking nothing. *In re Sierra-Cal*, 210 B.R. 168, 173 (Bankr.E.D.Cal. 1997).[12] Alary concedes it received an avoidable preference.

Thus, Alary agreed to permit splitting.

b

Second, a claim is not extinguished if the court in the first action expressly reserved the plaintiff's right to maintain the second action. RESTATEMENT (SECOND) OF JUDGMENTS § 26(a)(2).

If a court declines to hear an aspect of a cause of action in circumstances in which it is contemplated that the plaintiff will be able to litigate that issue later, an exception to splitting is appropriate. This is often manifested by the court's use of words to the effect of "without prejudice" when referring to a second action on the omitted part of the claim. RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. b.

11. For example, if the XYZ Corp. plan does not expressly reserve undisclosed avoiding actions against insiders who repaid themselves overdue unsecured loans just before bankruptcy, there is no good reason to preclude an avoiding action.

12. The statute provides:

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, or 553 of this title.

11 U.S.C. § 502(d).

The order confirming AVG's plan appoints the disbursing agent and authorizes him to perform his obligations under the plan, including prosecuting avoiding actions and objecting to claims under § 502(d).

This qualifies as a reservation by the court under the second exception to the General Rule Against "Splitting." RESTATEMENT (SECOND) OF JUDGMENTS § 26(a)(2).

## II

Having concluded that claim preclusion does not apply to the objection to Alary's claim, the question becomes whether the doctrines of judicial estoppel and equitable estoppel should nevertheless be applied.

The bankruptcy court reasoned that there was no factual basis to estop the disbursing agent from objecting to Alary's claim when it correctly construed our prior decisions as standing for the proposition "that a creditor cannot be 'sandbagged' into not opposing or even supporting a plan only to find itself in unanticipated post-confirmation litigation" and when it perceived no such problem. This refers to conduct that is the hallmark of estoppel doctrines that must be distinguished from preclusion doctrines. *See* RESTATEMENT (SECOND) OF JUDGMENTS, Introduction.[13]

### A

 The difference between estoppel and principles of res judicata is that estop-pel is based on conduct of a party in the course of litigation, while claim and issue preclusion follow from the fact of the judgment without reference to anyone's conduct. *Id.* Honoring this distinction presents a difficult analytical challenge when assessing the scope of the "claim" for claim preclusion purposes: one must resist the temptation to let conduct play a large role in the analysis of the scope of the "claim."

In our prior claim preclusion decisions, we have noted that principles of estoppel are an independent basis for reaching the same result. Thus, in *Heritage Hotel,* we held that, in addition to claim preclusion, the·debtors were equitably estopped from prosecuting lender liability claims they omitted from their bankruptcy schedules. *Heritage Hotel,* 160 B.R. at 374.

Indeed, the Ninth Circuit has neither enforced nor rejected claim preclusion based on a confirmed chapter 11 plan; it has, instead, opted for a theory of judicial estoppel when confronting omitted claims that a revested debtor seeks to prosecute after obtaining confirmation of a chapter 11 plan. *Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557 (9th Cir.1992); *accord, Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3rd Cir.1988).

### B

 Judicial estoppel is an equitable doctrine that encompasses a number of different abuses.

---

13. As explained in the Introduction to the *Restatement (Second),* one reason for eschewing the term "collateral estoppel" in favor of "issue preclusion" is the potential for confusion with true estoppel doctrines that are based on conduct:

> In many decisions, the terms res judicata and collateral estoppel have also been used to refer to some other and distinct forms of estoppel. [Examples omitted.]
> Estoppel on such a ground may well be justified in particular circumstances. With one exception [*Restatement (Second)* § 62 estoppel by conduct inducing reliance on adjudication], this Restatement does not address that question. That limitation of scope does not imply that estoppel on such a basis is in any sense inappropriate; it signifies only that the estoppel *results from conduct by the party and not from an adjudication.*

RESTATEMENT (SECOND) OF JUDGMENTS, Introduction (emphasis supplied).

■ One form of judicial estoppel is preclusion of inconsistent positions, which estops a party from gaining advantage by taking one position and later seeking another advantage from an inconsistent position. *New Hampshire v. Maine*, 532 U.S. 742, 749–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); *Hamilton*, 270 F.3d at 782–85; *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600–01 (9th Cir.1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990); 18B WRIGHT & MILLER § 4477.

■ The doctrine extends to incompatible statements and positions in different cases. *Rissetto*, 94 F.3d at 605.

■ Independent of unfair advantage from inconsistent positions, judicial estoppel may be imposed: out of "general consideration of the orderly administration of justice and regard for the dignity of judicial proceedings;" or to "protect against a litigant playing fast and loose with the courts." *Hamilton*, 270 F.3d at 782; *Russell*, 893 F.2d at 1037. Moreover, it may be invoked "to protect the integrity of the bankruptcy process." *Hamilton*, 270 F.3d at 785.

The Supreme Court, emphasizing that it was "not establish[ing] inflexible prerequisites," noted that the decision to apply judicial estoppel is typically informed by whether there was a "clearly inconsistent" position, whether the first position was accepted by a court so that acceptance of a second position would create the perception that one of the courts was misled, and whether an unfair advantage or unfair detriment would result without an estoppel. *New Hampshire v. Maine*, 532 U.S. at 750–51, 121 S.Ct. 1808 ("Additional considerations may inform the doctrine's application in specific factual contexts.").

The Ninth Circuit requires that the inconsistent position have been "accepted" by the first court. *Hamilton*, 270 F.3d at 783. In a functional sense, this satisfies the usual estoppel requirement of reliance. The focus of reliance is shifted from the opposing party to the court, which is, in effect, the victim.

In the bankruptcy context, the granting of a discharge is sufficient "acceptance" of the accuracy of a schedules to provide a basis for judicial estoppel, even if the discharge is later revoked. *Id.* at 784. A bankruptcy court may also "accept" a debtor's defective assertion based on nondisclosure in such other ways as vacating the automatic stay or confirming a plan. *Id.; Hay*, 978 F.2d at 557.[14]

The estoppel commonly takes the form of preventing the debtor from prosecuting, or otherwise enjoying the unscheduled property. *See, e.g., Hamilton*, 270 F.3d at 783. The debtor may also be estopped from claiming exemptions or objecting to claims in a reopened case. *In re Mahan*, 104 B.R. at 303.

14. In *Hay*, the Ninth Circuit adverted to a critical corollary when, after estopping the debtor, it noted: "[w]e make no ruling on the rights of the creditors themselves to move to reopen the bankruptcy proceedings." *Hay*, 978 F.2d at 557. The corollary is that the estopped debtor might not own the cause of action and might lack standing. Unscheduled property remains "property of the estate" after the case is closed (i.e. forever). 11 U.S.C. § 554(d). While it is surely appropriate to estop a nondisclosing debtor, the cause of action is property of the estate that (unless abandoned) can be exploited for the benefit of the estate. A dismissal would thus violate the automatic stay which remains in force after case closing to protect property of the estate. 11 U.S.C. § 362(c)(1). *The standard solution for dealing with property of the estate after closing is to reopen the case and order appointment of a trustee to deal with the property. See, e.g., In re Mahan*, 104 B.R. 300, 300–01 (Bankr.E.D.Cal.1989).

In this instance, there is no prior inconsistent position to which Alary can point. There is nothing inconsistent about the terms of the AVG plan and the disbursing agent's objection to claim. Nor is there any material nondisclosure that requires judicial estoppel to protect the integrity of the bankruptcy process. Thus, Alary is unable to rely on judicial estoppel.

### C

In *Heritage Hotel,* we applied the better-known equitable estoppel doctrine to prevent the revested debtor from prosecuting its undisclosed lender liability claim.

There are four basic elements to the defense of equitable estoppel: (1) the party to be estopped must know the facts; (2) the party to be estopped must either intend that its conduct will be acted upon or act in a manner that the party asserting estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the conduct to its injury. *United States v. Ruby Co.,* 588 F.2d 697, 703 (9th Cir.1978); *Kelley,* 199 B.R. at 705; *Heritage Hotel,* 160 B.R. at 378.

Alary, viewed as the party asserting estoppel, plainly fails to satisfy the last two elements. It unquestionably knew the true facts about how it obtained its security interest. No cognizable injury resulted to Alary as a result of its reliance on its hope that there would be no challenge to its preference.

Alary was not, in the words of the bankruptcy court "sandbagged" and cannot assert equitable estoppel.

### CONCLUSION

In sum, the doctrine of claim preclusion based on the confirmation of AVG's chapter 11 plan does not prevent the disbursing agent from objecting to Alary's security interest as an avoidable preference. Moreover, if claim preclusion did apply, the terms of the plan and the court's order confirming the plan contemplate that splitting would nevertheless be allowed in this instance. Nor does either judicial estoppel or equitable estoppel bar the disbursing agent's objection to claim.

AFFIRMED.